UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JACOB SMITH,

Petitioner,

v.

ISIDRO BACA, *et al.*,

Respondents.

Case No. 3:14-cv-00512-MMD-CLB

ORDER

## I.    SUMMARY

Petitioner Jacob Smith, a Nevada prisoner, filed a counseled first amended petition for writ of habeas corpus ("Amended Petition") (ECF No. 18) pursuant to 28 U.S.C. § 2254[1]. This matter comes before the Court for a final decision. For the reasons discussed below, the Court denies the Amended Petition.

## II.   BACKGROUND

Smith challenges a 2007 judgment of conviction entered by the Second Judicial District Court for Washoe County ("state district court" or "trial court"), pursuant to a jury verdict, for the first-degree murder of Richard Duarte with a deadly weapon. On May 9, 2006, Duarte was killed in Sparks, Nevada, by a gunshot wound to the head. (ECF No. 22-15 at 2.) Smith was sentenced to a term of life without the possibility of parole with a like consecutive term for the weapon enhancement. (ECF No. 22-6.) Smith appealed, and the Nevada Supreme Court affirmed in May 2009. (ECF No. 22-15.)

Smith filed a state petition for writ of habeas corpus seeking post-conviction relief. (ECF No. 23.) The state district court denied relief. (ECF No. 23-10.) Smith appealed, and

---

[1] Respondents have filed an answer (ECF No. 36), and Smith has replied (ECF No. 39).

the Nevada Supreme Court affirmed in September 2014. (ECF No. 23-16.)

In October 2014, Smith initiated this federal habeas corpus proceeding *pro se*. (ECF No. 1.) The Court appointed counsel to represent him. (ECF No. 5.) Counsel filed the amended petition in May 2016. Respondents then sought dismissal (ECF No. 24), which the Court denied and ordered Respondents to file an answer. (ECF No. 30.)

## III. STANDARD OF REVIEW

The standard of review generally applicable in habeas corpus cases is set forth is the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law established in Supreme Court cases or if the decision addresses facts materially indistinguishable from a Supreme Court case but reaches a different conclusion. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quotation omitted). "[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation omitted). An " 'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id.* (quoting *Lockyer*, 538 U.S. at 75–76). Where no Supreme Court decision squarely addresses "the

2

specific question presented" by a habeas petitioner, the state court's decision cannot be contrary to, nor an unreasonable application of, Supreme Court precedent. *Lopez v. Smith*, 574 U.S. 1, 4 (2014) (per curiam).

To obtain federal habeas relief, "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'." *White*, 572 U.S. at 419–20 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The Supreme Court has explained "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential," which "demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)). When a state court summarily rejects a claim, it is the petitioner's burden to show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

## IV.    DISCUSSION

The Amended Petition asserts five grounds for relief. (ECF No. 18 at 11–25.)  The Court will address each ground in turn.

### A.    Ground 1 – Right to Self-Representation

Smith's Amended Petition contends:

> The Trial Court Denied Smith his Right to Self-Representation, in Violation of Smith's Fourth, Fifth, and Fourteenth Amendment rights, by Denying Smith's Unequivocal Request for Self-Representation Based on Smith's Incomplete Knowledge of Legal Proceedings Which is an Improper Basis for the Denial.

(ECF No. 18 at 11.)[2]

---

[2]Although the headings in the Amended Petition and reply state that Ground 1 is based on violations of Smith's rights under the Fourth, Fifth, and Fourteenth Amendments, Smith's arguments for this claim only address the right to self-representation under the Sixth Amendment. (*See* ECF No. 18 at 11–15; ECF No. 39 at 5–12.) Given that Smith presents no principled argument in support of claims under the other amendments, the Court limits its analysis to the Sixth Amendment.

### 1.   Background Relevant to Ground 1

In March 2007, Smith invoked his right to self-representation at the justice court level before his preliminary hearing. (ECF No. 19-7 at 5–14.) The justice court conducted a *Faretta* canvass of Smith and then stated that argument would be heard. (*Id.* at 14–24.)

> THE COURT: Okay. I think we've been through everything we need to go through. Okay, I will hear argument, Mr. Smith.
>
> THE DEFENDANT: Argument that says I want this case dismissed.
>
> THE COURT: No. On why you should be able to represent yourself.
>
> THE DEFENDANT: Because that's my right, my constitutional right, I want to represent myself . . ..
>
> THE COURT: The question before me is whether the defendant should be allowed to represent himself at this stage of the proceedings . . . [a]nd basically I have to ask the following questions.
>
> First, does the defendant appear to understand the nature of the proceedings? I believe he does. I think clearly from his ability to answer the questions coherently, he. does.
>
> Secondly, is he voluntarily exercising an informed free will? I think his will is free. *My problem here is I don't know how informed the defendant is. I don't think he understands the significance of the proceeding as expressed when I asked him to argue to the Court in support of his motion, because I said: Mr. Smith, argue. His response was that he wanted to argue for his case to be dismissed. And that right there shows me that he does not understand the nature of the legal proceedings.*
>
> So at this time I'm going to deny your motion. *You can remake the motion before the District Court if this case proceeds further*, if there is sufficient evidence to hold you, so that you don't necessarily lose anything.

(*Id.* at 24–27 (emphasis added).) Thereafter, the preliminary hearing went forward, and the justice court bound the case over to the state district court for trial. (*Id.* at 127–28.)

In May 2007, two weeks before trial, Smith complained to the trial court that he "never talked to [his] lawyer." (ECF No. 19-10 at 5.) The judge responded, "I hear stuff like that all the time, and it's pretty obvious . . . that you two have talked . . . Maybe he's not saying what you want him to hear, but I'm positive that you have talked." (*Id.*)

On the first day of trial, June 4, 2007, defense counsel informed the trial court that Smith wanted to make a record regarding counsel's representation. (ECF No. 20 at 5.) Smith again complained about his counsel:

THE DEFENDANT: [my counsel] [a]re generally being ineffective in helping me. And I tried to voice this opinion already, and they're still representing me. I've received really no help.

I've tried to offer them notes. They never took my notes. I don't know what my exact defense is in this case. I just feel they're not helping me. They filed no motions. And I wanted to file some motions, but anything that I do, my understanding, would be through a fugitive document.

So I just want to put on the record that I feel this is ineffective assistance of my counsel. That's pretty much it.

(*Id.* at 5–6.) Smith also told the judge, "I just don't feel we're prepared for trial at all. . . . And I just – I feel misrepresented." (*Id.* at 10.)

As the parties continued to discuss whether the defense was ready for trial, defense counsel reminded the judge that Smith previously attempted to waive counsel and represent himself during the justice court proceeding:

MR. CALVERT: Mr. Smith made a motion at the preliminary hearing to represent himself, and a *Faretta* hearing was handled on that, and it was denied at that time.

I got information through my investigator that it appeared Mr. Smith still wanted to pursue representing himself, and so we raised that issue at the arraignment phase.

I don't know if you remember when we were in here. He told me before the case was actually called that he didn't want to do that anymore. So we went through an arraignment in which the Court had to enter a plea of not guilty on his behalf and set a trial date for him within 60 days.

(*Id.* at 6–7.) The prosecutor also noted that Smith requested self-representation and a speedy trial during the justice court proceedings. (*Id.* at 11.) He understood that Smith was no longer seeking to waive counsel, but Smith did not waive his speedy trial right. (*Id.* at 12 (stating, "after [Smith] was bound over, as I understand from Mr. Calvert, he is no longer requesting to represent himself").) The prosecutor expressed his belief that "Smith probably would never be happy" with his counsel and asked that the trial proceed as scheduled. (*Id.* at 13–14.) Smith denied the prosecutor's assertion, claiming "I never had a conflict with them." (*Id.* at 15.) The state district court denied a continuance and the trial began the same day. (*Id.* at 16–17.)

In Smith's direct appeal, the Nevada Supreme Court provided the relevant background and held as follows:

> A preliminary examination was held on March 29, 2007, in the Justice Court of Sparks Township. During the preliminary hearing, the district court heard Smith's motion to waive counsel and represent himself.
>
> Justice of the Peace Mary Kandaras conducted a self-representation canvass at the preliminary hearing. After conducting the canvass, Kandaras denied Smith's motion to represent himself because she determined that Smith was not legally qualified to represent himself. Upon the denial of Smith's motion, Kandaras conducted a preliminary hearing and bound Smith over for trial.
>
> Smith argues that the justice court abused its discretion in denying his motion and request to represent himself, which forced continued legal representation upon him. Smith further argues that the justice court abused its discretion because it denied his motion based on the belief that he did not understand the nature or significance of the legal proceedings. Smith contends that the justice court's stated reason for denying his motion for self-representation was in violation of our holding in *Graves v. State*, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996) (holding that when conducting a canvas, the only question for the court to examine is whether the defendant "competently and intelligently" chose self-representation, not whether he was able to "competently and intelligently'" represent himself). Smith therefore argues that because the justice court abused its discretion, his conviction in the district court is invalid.
>
> Without conceding that Smith's argument is correct, the State argues that Smith waived his right to self-representation by failing to renew his motion to waive counsel at the district court level. The State further contends that by failing to renew his motion Smith acquiesced to his publicly appointed counsel because the justice court informed him of his right to renew the motion. We agree with the State's argument in light of our recent decision in *Hooks v. State*, 124 Nev._ [sic], 176 P.3d 1081, 1086–87 (2008) (holding that it was reversible error for a district court to fail to perform a *Faretta* canvass when a criminal defendant asserted the right to self-representation even if a canvass had been performed by the justice court).
>
> In reviewing a lower court's denial of a motion to waive counsel and represent one's self, we will reverse a conviction only if the court abused its discretion. *See Gallego v. State*, 117 Nev. 348, 362, 23 P.3d 227, 236–37 (2001).
>
> A criminal defendant has an unqualified right to self-representation under U.S. Const. amend. VI and Nev. Const. art. 1 §8, as long as the defendant has given a "voluntary and intelligent waiver of the right to counsel." *Lyons v. State*, 106 Nev. 438, 443, 796 P.2d 210, 213 (1990) *(abrogated on other grounds by Vanisi v. State*, 117 Nev. 330, 22 P.3d 1164 (2001)). "However, a defendant may be denied his right to self-representation where his request is untimely, the request is equivocal, the request is made solely for the purpose of delay, the defendant abuses his right by disrupting the judicial process, or the defendant is incompetent to waive his right to counsel." *Tanksley v. State*, 113 Nev. 997, 1001, 946 P.2d 148, 150 (1997).

When a criminal defendant chooses self-representation in Nevada, district courts are required to instruct defendants pursuant to Supreme Court Rule 253, which sets forth numerous factors relevant to a defendant's decision to waive his right to counsel. Specifically, SCR 253 requires the district court to conduct a "canvass" of the defendant to determine whether the defendant understands the consequences of his/her decision, and whether the decision of the defendant is given voluntarily. A district court abuses its discretion if it fails to perform a canvass under SCR 253 when a criminal defendant asserts the right to self-representation. The district court is required to conduct a canvass under SCR 253 when a criminal defendant asserts his right to self-representation, even if a canvass was previously performed by the justice court and failure to do so constitutes an abuse of discretion. *Hooks* at _ [sic], 176 P.3d at 1086–87.

However, when a motion for self-representation has been made in the justice court, a criminal defendant must reassert a claim to self-representation at the district court level. Although Smith asserted his right to self-representation in the justice court, and the justice court arguably erred in denying his motion, Smith failed to reassert his right in the district court even after the justice court told him he had the right to do so. Without an affirmative assertion of his right, the district court has no reason to perform a canvass. Therefore, the district court had no obligation to act without Smith's assertion of his right. Thus, we conclude that Smith's failure to reassert his claim to self-representation in the district court was a waiver of his Sixth Amendment right to self-representation.

(ECF No. 22-15 at 3–6.)

## 2. The Parties' Positions on Ground 1

Smith asserts that "state trial court" violated his constitutional rights by denying his request for self-representation. (ECF No. 18 at 15.) He claims the justice court incorrectly found that he did not understand the significance of the proceeding; thus, his motion to waive counsel was erroneously denied and his right to self-representation was violated. (*Id.* at 11–13.) According to Smith, the record shows he was competent and voluntarily exercised his informed free will; thus, the justice court erred in denying his request based on his lack of legal ability. He further argues that he reiterated his desire for self-representation to the trial court by complaining that his attorneys were not adequately assisting him, yet the court disregarded the complaints. (*Id.* at 14 ("In the end, Smith goes to trial with attorneys he did not want, he did not trust, and with whom he had developed an irreconcilable relationship.") Smith claims he held fast to the desire to represent himself, and his *Faretta* right was violated. (*Id.* at 15.) This violation, Smith asserts, constitutes

"structural error" that cannot be deemed harmless.

Respondents argue that the Nevada Supreme Court did not unreasonably apply constitutional standards when it found that Smith's failure to reassert a request for self-representation in the state district court was a waiver of his *Faretta* right. (ECF No. 36 at 3–4.) They point out that the Nevada Supreme Court's factual findings are presumed correct, and an express finding of waiver was made. Respondents contend that there is no established federal law requiring state courts to assert a defendant's right to self-representation when he fails to do so. Because Smith failed to assert his *Faretta* right after he was bound over for trial, Respondents insist that the state district court had no reason to canvass Smith on his ability or desire to proceed without counsel, and the Nevada Supreme Court did not unreasonably apply *Faretta*.

### 3.    Analysis of Ground 1

The Sixth Amendment guarantees the right to assistance of defense counsel in all criminal prosecutions. U.S. Cost. amend. VI. The Sixth Amendment also encompasses the right to self-representation at trial and to refuse the assistance of counsel. *Faretta*, 422 U.S. at 834. Because the right to counsel is guaranteed, a defendant's exercise of the right to self-representation necessarily requires a valid waiver of the right to counsel. *Sandoval. v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2001) (noting that "the right to self-representation does not attach until asserted," unlike the right to counsel which "attaches unless affirmatively waived"). A waiver of the right to counsel must be unequivocal because that right is "automatic," and the assistance of counsel must be available whether the defendant has requested such assistance or not. *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989) (citing *Brewer v. Williams*, 430 U.S. 387, 404 (1977)).

The Ninth Circuit has referred to the right to self-representation as "disfavored" when compared to the important benefits expressly offered by the right to counsel. *Sandoval*, 241 F.3d at 774. A court may properly deny a defendant's request for self-representation "if the *Faretta* demand is untimely, equivocal, made for the purpose of delay, or is not knowingly and intelligently made." *Id.* Supreme Court precedent has also

8

limited *Faretta*'s holding in material respects. *Id.* (citing *Martinez v. Court of Appeal of California*, 528 U.S. 152, 154 (2000) (holding that *Faretta* does not extend to a defendant on direct appeal from a criminal conviction); *McKaskle v. Wiggins*, 465 U.S. 168, 182–83 (1984) (a *pro se* defendant may waive his *Faretta* rights by agreeing or acquiescing to standby counsel's unsolicited participation at trial)).

Smith has not shouldered his burden of establishing that the Nevada Supreme Court's decision rejecting his *Faretta* claim was contrary to or an unreasonable application of clearly established federal law. The Nevada Supreme Court held that, even if the justice court erred in denying his motion, Smith was required to renew his *Faretta* request at the district court level, but he "failed to reassert his right in the district court even after the justice court told him he had the right to do so." (ECF No. 22-15 at 5–6.) The record amply supports the Nevada Supreme Court's conclusion that Smith waived his *Faretta* right by failing to renew a request for self-representation during the state district court proceedings. During two hearings before the trial court, the parties referenced Smith's initial request for self-representation, albeit in the context of Smith's perceived shortcomings of defense counsel. (ECF No. 19-9 at 4; ECF No. 20 at 5–17.) Smith directly addressed the trial court in both hearings but did not renew the *Faretta* motion. (*Id.*) In fact, on the first day of trial, both defense counsel and the prosecutor expressly informed the trial court that Smith no longer wished to represent himself. (ECF No. 20 at 6–12.) Smith said nothing to refute counsel or the prosecutor's statements and explicitly denied having any conflict with counsel. (*Id.* at 15.)

Requiring a defendant to reassert his right to self-representation before the trial court comports with *Faretta*'s safeguard that a defendant unequivocally waive his right to counsel. *See Faretta*, 422 U.S. at 835; *Adams*, 875 F.2d at 1444. Smith claims he reiterated his desire for self-representation before the trial court. (ECF No. 39 at 7–8 (citing (ECF No. 20 at 5).) However, the cited portion of the trial transcript demonstrates that Smith did not clearly request or express any desire for self-representation. Complaining about one's counsel is *not* a request for self-representation. Because Smith never

reasserted a *Faretta* request before the trial court, the Nevada Supreme Court's finding of waiver was a reasonable determination of the facts.

In light of the facts and foregoing authorities, the Nevada Supreme Court's ruling was not contrary to, nor an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Ground 1 provides no basis for habeas relief.

### 4. New Claim Regarding the Justice Court's Denial of Smith's *Faretta* Motion

Upon careful review of Smith's arguments and appellate briefs, it appears that his reply presents a new claim—the *justice court's* erroneous denial of Smith's motion for self-representation violated his *Faretta* right, which encompasses a right to self-representation *at a preliminary hearing*. Smith argues in his reply that both Respondents and the Nevada Supreme Court failed to address his argument that he was entitled to represent himself at his preliminary hearing. (ECF No. 39 at 9–12.) He maintains that his request for self-representation in the justice court met the *Faretta* standard as it was unequivocal, knowing, and voluntary; thus, "the court's denial of his request to represent himself violated his right to conduct his own defense *at his preliminary hearing*." (ECF No. 39 at 8–9 (emphasis added).) Smith claims the denial of self-representation at his preliminary hearing is structural error that cannot be deemed harmless and the Nevada Supreme Court's decision is both contrary to and an unreasonable application of *Faretta*.

The pleading standard for federal habeas petitions is "more demanding" than the notice pleading standard applied in other civil cases. *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (noting that Fed. R. Civ. P. 8(a) requires only "fair notice" while Habeas Rule 2(c)[3] demands more—"it is the relationship of the facts to the claim asserted that is important"). Rule 2(c) "requires a more detailed statement," as it "instructs the petitioner to 'specify all the grounds for relief available to [him]' and to 'state the facts supporting each ground'."

---

[3]All references to a "Habeas Rule" or the "Habeas Rules" in this order identify the Rules Governing Section 2254 Cases in the United States District Courts.

*Id.* at 649. New claims may not be presented for the first time in the federal reply. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Moreover, a petitioner may not pursue claims that were not previously exhausted in the state courts as he must fairly present both the operative facts and federal legal theories supporting his claims. 28 U.S.C. § 2254(b)(1)(A).

Smith's new claim differs from what he presented in the Amended Petition and on direct appeal. The Amended Petition discusses the justice court's denial of his *Faretta* motion but claims the *trial court* violated Smith's *Faretta* right. (ECF No. 18 at 11–15.) Smith's opening brief to the Nevada Supreme Court also discusses the justice court's denial of his *Faretta* motion, claiming the trial court "refused to continue the trial" and "[n]o *Faretta* canvas was ever given" despite Smith's repeated complaints of inadequate assistance of counsel. (ECF No. 22-12 at 12–13.) The brief paraphrases *Faretta* and states, "[i]t is no answer to the [Smith's] challenge to say that he acquiesced in accepting his court-appointed counsel." (*Id.* at 16.) The appellate reply brief reiterates that he did not acquiesce to representation by court-appointed counsel. (ECF No. 22-14 at 8.) Nowhere in the amended petition or appellate briefs did Smith argue that his *Faretta* right extended to his preliminary hearing and was violated when the justice court denied his motion.

Smith's federal reply clearly presents a discrete legal theory alleging that the justice court violated his right to self-representation at his preliminary hearing by denying his *Faretta* motion. The reply focuses on Supreme Court precedent holding that the right to counsel applies at all critical stages of prosecution, and the preliminary hearing is a critical stage.[4] Smith did not cite to any of these cases in his Amended Petition or appellate briefs. A claim that a defendant was denied the right of self-representation *at a preliminary hearing* is markedly different from a claim that a defendant was denied the right of self-representation *at trial*. As such, the new claim was not fairly presented to the state courts and is therefore unexhausted. *See Picard v. Connor*, 404 U.S. 270, 277–78 (1971).

---

[4]ECF No. 39 at 9 (citing *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013); *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004); *Coleman v. Alabama*, 399 U.S. 1, 9–10 (1970)).

Assuming for the sake of discussion that Smith's new theory was exhausted in the state courts and properly presented in the Amended Petition, it would be subject to deferential review under AEDPA. Where a state court addresses claims in a written decision but does not expressly address all of the claims a petitioner presented, deferential review under AEDPA still applies to review of the state court's implicit rejection of the claims that were not discussed. *Johnson v. Williams*, 568 U.S. 289, 300–01 (2013). A federal court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102. "If such disagreement is possible, then the petitioner's claim must be denied." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018). Applying this deferential standard, the Court finds that Smith's new claim would not entitle him to relief.

Smith's new claim rests on two premises: (1) the *Faretta* right to self-representation encompasses a preliminary hearing, and (2) a violation of the right to self-representation at the preliminary hearing stage is structural error. Neither premise is clearly established under Supreme Court precedent.

First, the Nevada Supreme Court could have held that *Faretta*'s general principle about the right to self-representation at trial does not establish a clearly specific rule regarding self-representation at a preliminary hearing. *See Lopez*, 574 U.S. at 4. *Faretta* only explicitly addressed a defendant's request to represent himself *at trial.* 422 U.S. at 807–11, 815–16 (noting "that a defendant has a constitutionally protected right to represent himself *in a criminal trial*" (emphasis added)). The Supreme Court has not established that the right to self-representation extends to pre-trial proceedings such as preliminary hearings. *E.g.*, *Martinez*, 528 U.S. at 154 (*Faretta*'s "specific holding was confined to the right to defend oneself *at trial*" (emphasis added)); *Nero v. Allison*, 757 F. Supp. 2d 971, 975 (C.D. Cal. 2010) (denying petitioner's § 2254 claim that his right to self-

1   representation was violated when trial court refused to allow him to represent himself at

2   the preliminary hearing). Smith points to no Supreme Court case holding as much.

3        Second, even assuming that the justice court erroneously denied Smith's *Faretta*

4   motion, the Nevada Supreme Court could have held that such error is not structural, thus

5   requiring automatic reversal, and concluded that justice court's error was harmless.

6   *Faretta* and its progeny have not established that, on federal habeas review, an erroneous

7   denial of self-representation at the preliminary hearing stage is structural error and

8   precluded from harmless error analysis. For purposes of federal habeas, "[*m*]ost

9   constitutional mistakes call for reversal only if the government cannot demonstrate

10  harmlessness." *Glebe v. Frost*, 574 U.S. 21, 23 (2014) (citing *Neder v. United States*, 527

11  U.S. 1, 8 (1999)) (emphasis in original). On direct review, clearly established federal law

12  provides that a denial of the *Faretta* right *at trial* is structural error and is not subject to

13  harmless error analysis. *McKaskle*, 465 U.S. at 177 n.8. However, there is no Supreme

14  Court precedent pronouncing that, on federal habeas review, an erroneous denial of the

15  right to self-representation at a preliminary hearing is structural error. Smith cites no

16  Supreme Court case to support his assertion. And he does not attempt to challenge any

17  implicit harmless-error determination in the Nevada Supreme Court's decision.

18       Given the lack of specific Supreme Court case law supporting Smith's new claim,

19  the Nevada Supreme Court could have concluded that there is no right of self-

20  representation at a preliminary hearing and any error by the justice court was harmless.

21  Fairminded jurists could disagree whether such a holding is inconsistent with prior

22  Supreme Court precedent. Because disagreement is possible, Smith's claim must be

23  denied. *See Beaudreaux*, 138 S. Ct. at 2558. The Nevada Supreme Court's implicit

24  rejection of Smith's new claim was neither contrary to nor an unreasonable application of

25  clearly established federal law as determined by the U.S. Supreme Court based on the

26  record and argument presented to that court.

27

28

## A.     Grounds 2–4 – Prosecutorial Misconduct

In Grounds 2 through 4, Smith argues that the Washoe County District Attorney committed various acts of misconduct. The standard set forth in *Darden v. Wainwright*, 477 U.S. 168 (1986), is the "clearly established law" governing claims of prosecutorial misconduct for purposes of habeas review under AEDPA. *Parker v. Matthews*, 567 U.S. 37, 45 (2012). "[A] prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'." *Id.* (quoting *Darden*, 477 U.S. at 181). *Darden* explained "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." 477 U.S. at 180–81 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To determine whether a prosecutor's comments rise to the level of a due process violation, a reviewing court must examine the entire proceedings and place the prosecutor's remarks in their proper context. *Boyde v. California*, 494 U.S. 370, 384–85 (1990); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").

The *Darden* standard "is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 567 U.S. at 48 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Nevertheless, AEDPA "recognizes . . . that even a general standard may be applied in an unreasonable manner." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Federal courts may find "an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced." *Id.*

### 1.     Ground 2 – Coercion and Intimidation of Witnesses

Smith argues that prosecutors committed misconduct by allowing detectives to coerce and intimidate potentially exculpatory witnesses Natalie Wolfe, Smith's girlfriend, and Joshua Wolfe, her brother. He claims his Sixth Amendment right to compulsory

process and Fourteenth Amendment right to due process were violated.[5]

Smith's counsel did not invoke the rule of exclusion before trial.[6] As a result, two investigating detectives sat in the courtroom throughout trial. Both Natalie and Joshua testified at the preliminary hearing and at trial. Natalie was extensively questioned at trial about her inconsistent statements to the police. (ECF No. 20-1 at 174–202, ECF No. 21 at 8–53.) She admitted that she initially lied to the police and they told her she was lying. (ECF No. 21 at 24.) She testified that the detectives threatened to take her children away and charge her with a crime, such as perjury, aiding and abetting, or being an accessory to Duarte's murder, if she did not cooperate with the police or later changed her statement. (*Id.* at 24–28.) However, she also testified that the threats did not change her testimony. (*Id.* at 52–53 ("Q. But what I'm saying is: Did it change your testimony in any way yesterday? Did it make you tell a lie? A. No. I told the same thing. . . . Q. Well, it didn't affect your testimony. Would you agree with that? A. Right.").) Joshua was also examined about his inconsistent statements to the police. (ECF No. 21 at 231–52; ECF No. 21-1 at 2–20.) He testified that he was initially "leaving stuff out," which prompted detectives to pressure him "to tell the truth," but no one subsequently pressured him to change his story, and he had not done so. (ECF No. 21 at 250.) Joshua further testified that he saw a vehicle driven by an unidentified African-American male arrive at the scene (*id.* at 240–42), which supported Smith's alternative theory that unidentified African-American male shot Duarte.

On direct appeal, the Nevada Supreme Court summarily concluded that this claim

---

[5]Smith further asserts in passing that his rights to equal protection and a fair trial were violated. (ECF No. 18 at 16; *see also* ECF No. 22 at 23–24, Direct Appeal Opening Brief (alleging violations of the "federal constitutional guarantees of due process, equal protection of the laws, a fair trial, and a reliable sentence due to State's witnesses intimidating witnesses" (citing U.S. Const. V, VI, VIII & XIV).) However, Smith's arguments for this claim only address the rights to compulsory process and due process. (ECF No. 18 at 17–18; ECF No. 39 at 13–15.) As such, the Court limits its analysis to compulsory process and due process. *See also*, *supra*, note 1.

[6]Defense counsel attempted to invoke the exclusionary rule after Natalie began testifying, but the state district court held that it was "too late" and denied the motion. (ECF No. 20-1 at 183–86.)

did not warrant reversal. (ECF No. 22-15 at 3 n.1.)[7]

Here, Smith claims the detectives' presence coerced Natalie and caused her to alter her testimony in a manner unfavorable to Smith. (ECF No. 18 at 15–18.) He argues that the detectives also threatened Joshua. Respondents counter that Smith fails to show any misconduct by the prosecution or law enforcement. (ECF No. 36 at 4–6.) They argue that the parties thoroughly examined Natalie at trial on whether she lied to the police and whether she felt intimidated by the detectives' presence in the courtroom, and she testified that the detectives' conduct did not change her testimony. Respondents further point out that Joshua did, in fact, testify on Smith's behalf at trial. Smith replies that by allowing detectives to engage in misconduct, the prosecution violated its heightened duty to ensure the fairness and integrity of trial proceedings. (ECF No. 39 at 13–15.)[8]

The Compulsory Process Clause of the Sixth Amendment provides an accused individual the "right to offer the testimony of witnesses, and to compel their attendance, if necessary." *Washington v. Texas*, 388 U.S. 14, 18–19 (1967). As "a fundamental element

---

[7]This argument was one of seven the Nevada Supreme Court summarily rejected in a footnote:

> Smith also raises the following arguments on appeal: 1) the district court erred in failing to give defense counsel additional time to prepare, 2) Smith's counsel was ineffective because he failed to invoke the rule of exclusion, 3) the prosecutor committed misconduct by helping the police to continue coercing defense witnesses, 4) the prosecutor unlawfully shifted the burden of proof to Smith, 5) the prosecutor committed misconduct by misinforming the jury on the legal standard of first-degree murder, 6) the district court erred by refusing to give a jury instruction on circumstantial evidence, and 7) Smith's conviction should be reversed because of cumulative error. After careful review, we conclude that none of these separate arguments warrant reversal.

(ECF No. 22-15 at 3, n.1.)

[8]Smith cites *Berger v. United States*, 295 U.S. 78, 88 (1935), in alleging the prosecutors violated their heightened duty. *Berger* involved a federal criminal conviction—not a *state* criminal conviction on habeas review. Although *Berger* discussed prosecutorial responsibility, the decision reversed the federal conviction without expressly articulating a constitutional basis for the reversal, and nothing in that decision indicates that the Supreme Court was articulating a constitutional standard. Federal courts monitor the conduct of federal prosecutors as an exercise of supervisory power that is broader than review for constitutional error. *See*, *e.g.*, *Donnelly*, 416 U.S. at 642. *Berger* does not guide the Court's analysis of Ground 2.

of due process of law," the right to compulsory process is incorporated against the states through the Due Process Clause of the Fourteenth Amendment. *Id.* at 19. The U.S. Supreme Court has established that the government deprives due process of law when it "effectively dr[ives a] witness off the stand." *Webb v. Texas*, 409 U.S. 95, 98 (1972) (holding that petitioner's due process right was violated when the trial judge admonished and singled out a defense witness about the risks of perjury in "unnecessarily strong terms"). Under *Webb*, "substantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process." *Ayala v. Chappell*, 829 F.3d 1081, 1111 (9th Cir. 2016) (quotation omitted).

The Nevada Supreme Court's decision summarily rejecting Smith's claim of witness intimidation withstands deferential review under AEDPA. *See Richter*, 562 U.S. at 98 (where state court summarily rejects a claim, petitioner must show that "there was no reasonable basis for the state court to deny relief"). The record does not suggest that the prosecutors or detectives effectively drove Nicole or Joshua off the stand or changed their testimony. Both witnesses testified under oath that the police pressured them to tell the truth, and both stated that their testimony was truthful. Joshua testified consistent with Smith's alternative theory that an unidentified African-American male shot Duarte, and parts of Natalie's testimony were either exculpatory or equivocal. Smith does not describe how and when these witnesses' testimony changed from exculpatory to inculpatory. Smith has failed to show that the detectives' admonitions regarding perjury were overly harsh or that their pressure tactics had any effect on Nicole or Joshua's testimony. In light of their testimony, the Nevada Supreme Court could have reasonably found that Nicole and Joshua were not intimidated by the detectives. Given that the Nevada Supreme Court could reasonably so find, the conclusion that Smith had not demonstrated a due process violation is neither contrary to nor an unreasonable application of *Darden* or *Webb*.

The Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court

1    denies Smith relief with respect to Ground 2.

2              **2.    Ground 3 – Burden Shifting**

3        Smith asserts that the prosecutor committed prosecutorial misconduct by

4    impermissibly shifting the burden of proof, in violation of his Fifth, Sixth, and Fourteenth

5    Amendment rights, when the prosecutor questioned Smith's failure to present evidence

6    proving his innocence.

7        Smith waived his right not to testify, against counsel's advice, and testified at trial.

8    (ECF No. 21-1 at 21–23.) During cross-examination, Smith asserted that there was "hard

9    physical evidence to prove [his] innocence," including surveillance videos from casinos

10   and a liquor store on the night of the murder. (*Id.* at 78–79.) The prosecutor posed

11   questions to Smith and stated the following:

12   •   "Is there anything you can pinpoint, like show the jury this hard physical evidence

13       you have to prove your innocence?" (*Id.* at 78.)

14   •   "So this hard evidence you have, and this story that you have told here today and

15       to the police back on July 14th, there's nothing to what we call [*sic*] corroborated.

16       There's no other evidence to show your story rather than the other witnesses in this

17       case is the correct version. Wouldn't you agree with that?" (*Id.* at 80–81.)

18   •   "Well, I'm still looking for that hard evidence, Mr. Smith." (*Id.* at 122.)

19   During his closing argument, the prosecutor argued that Smith must have killed Duarte

20   because Smith never told his girlfriend that he did not commit the murder. (ECF No. 22 at

21   36 ("Not to this day has he ever told Natalie he didn't commit the murder.").) Natalie

22   testified that she did not ask Smith what happened regarding the gunshot and he never

23   told her what happened. (ECF No. 21 at 42–43.)

24       During the defense summation, Smith's counsel reminded the jury of the State's

25   burden:

26       The State said something very interesting when Mr. Clifton started with his
         cross. What hard evidence do you have, Mr. Smith, to prove your
27       innocence? Ladies and gentlemen, we're in the United States. Mr. Smith
         doesn't have to prove anything. He didn't have to take the stand. The burden
28       of proof is not on him. This isn't Iraq. This isn't Russia. We have a system in

                                            18

place where the State has to prove each and every element of the charge against the defendant beyond a reasonable doubt. Not maybe, not what if, not perhaps, and certainly not a defendant having to prove his own innocence. That's not what we do in this country.

(ECF No. 22 at 65–66.) In addition, the jury instructions stated, "[t]he burden rests upon the prosecution to establish every element of the crime with which the defendant is charged, and every element of the crime must be established beyond a reasonable doubt." (ECF No. 22-1 at 11.)

On direct appeal, Smith argued that the prosecutor committed misconduct by unlawfully shifting the burden of proof to Smith. (ECF No. 22-12 at 24–26.) The Nevada Supreme Court summarily rejected his claim. (ECF No. 22-15 at 3 n.1.)

In Ground 3, Smith repeats his claim that the prosecutor impermissibly shifted the burden of proof, asserting that the prosecutor badgered him with impermissible questions implying that he had an obligation to provide the jury with evidence and otherwise prove his innocence. (ECF No. 18 at 18–19.) Respondents argue that the prosecutor's questions and statements, when viewed in the context of the entire trial, do not amount to a due process violation. (ECF No. 36 at 6–7.) Respondents point out that Smith's counsel re-directed the jury's attention to the appropriate burden of proof during his closing argument, and the jury instructions clearly and correctly articulated the burden of proof in a criminal trial. Smith's reply contends that the burden shifting was not cured by the jury instructions or counsel's re-direction of the jury because the damage was done by the time counsel addressed the issue during the defense summation and the prosecution had already interfered with his right to the presumption of innocence. (ECF No. 39 at 15–16.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). Where a defendant "did in fact testify at trial, the prosecutor's

19

comment cannot be said to have shifted the burden of proof." *United States v. Garcia-Guizar*, 160 F.3d 511, 522 (9th Cir. 1998) (rejecting claim that prosecutor's statement violated *In re Winship*'s requirement that each element be proved beyond a reasonable doubt) (citing *United States v. Williams*, 990 F.2d 507, 510 (9th Cir. 1993) (holding that defendant's "Fifth Amendment right not to testify was not implicated because he did in fact testify at trial," and he "opened the door" by arguing that prosecutor's decision not to call witness was evidence of weakness in government's case; thus, prosecutor's comment concerning defendant's power of subpoena and failure to call witness did not shift the burden of proof)).

On the record and arguments presented to the Nevada Supreme Court, its rejection of Smith's burden shifting claim withstands deferential review under AEDPA and *Darden*. Smith waived his Fifth Amendment right to silence and testified at trial. By testifying that there was physical evidence proving his innocence, the Nevada Supreme Court could have reasonably found that Smith opened the door to the prosecutor's questions and argument regarding his failure to provide such exculpatory evidence. The Court is not persuaded by Smith's unsupported argument that the "damage was done" by the prosecutor's summation and neither the jury instructions nor trial counsel's summation were sufficient to re-direct the jury as to the burden of proof. Supreme Court precedent recognizes jury instructions "as definitive and binding statements of law" and holds that prosecutors' arguments are "not to be judged as having the same force as an instruction from the court." *See Boyde*, 494 U.S. at 384–85. Smith fails to identify any facts to overcome this presumption.

Additionally, the Nevada Supreme Court could reasonably have held that the prosecutor's assertion in closing argument—Smith must have killed Duarte because Smith never told Natalie that he didn't commit the murder—was permissibly drawn from Natalie's testimony. Prosecutors may argue about inferences that are reasonably drawn from the evidence. *Ayala*, 829 F.3d at 1115. Natalie testified that Smith never told her what happened, and she did not ask. Even if the prosecutor's argument is understood as

directing the jury's attention to an inappropriate inference, that would not establish that the Nevada Supreme Court's rejection of this claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (quoting *Richter*, 562 U.S. at 103). Because the Nevada Supreme Court could reasonably have made the factual findings identified herein, a conclusion that Smith has not demonstrated a due process violation under *Darden*'s broad general standard is neither contrary to nor an unreasonable application of that standard.

The Nevada Supreme Court's ruling rejecting Ground 3 was not contrary to, or an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court denies Smith relief with respect to Ground 3.

### 3.    Ground 4 – Misstating Elements of First-Degree Murder

Smith contends the prosecutor violated his right to due process, a fair trial, and the requirement that the State prove his guilt beyond a reasonable doubt by misinforming the jury of the proper elements of first-degree murder.

During closing arguments, the prosecutor described to the jury the legal standard for proving the three mental state requirements necessary to support a first-degree murder conviction—willfulness, deliberation, and premeditation:

> Malice aforethought and premeditation can be a thought of the mind, successive thoughts of the mind, like: "I'm going to pull this trigger." Your mind must have told your finger to pull it. You've got your premeditation. You've got that premeditation because he decided, and it was deliberation, and he decided to pull that trigger.

(ECF No. 22 at 40:18–23.) He continued, "[w]hen you shoot someone in the head, you pull that trigger, it's pretty hard to claim it was an accident. It's pretty hard to claim it wasn't deliberate. It's pretty hard to claim you didn't intent to pull your index finger back on that trigger. That's premeditation. That's deliberation." (*Id.* at 44:2–7.) The prosecutor also stated, "[w]hen somebody shoots somebody in the head, they know this could kill them. They know that. It's automatic. You're going to have your deliberation when you pull the

trigger that close to somebody with a gun to the head." (*Id.* at 46:13–16.) He further argued, "if you know in your heart and in your mind that those guns were in this defendant's possession before that shooting, you have to convict him of first-degree murder." (*Id.* at 53:24–54:3.)

Jury Instruction #17 laid out the three mental elements required to prove first-degree murder:

> Murder of the first degree is murder which is perpetrated by means of any kind of willful, deliberate, and premeditated killing. All three elements--willfulness, deliberation, and premeditation--must be proven beyond a reasonable doubt before an accused can be convicted of first-degree murder.
>
> Willfulness is the intent to kill. There need be no appreciable space of time between formation of the intent to kill and the act of killing.
>
> Deliberation is the process of determining upon a course of action to kill as a result of thought, including weighing the reasons for and against the action and considering the consequences of the action. . . .
>
> Premeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing.
>
> Premeditation need not be for a day, an hour, or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the act follows the premeditation, it is premeditated.

(ECF No. 22-1 at 18–19.) The jury instructions also included the elements of murder with malice aforethought, the distinction between the two degrees of murder, the definition of first-degree murder, manslaughter, voluntary manslaughter, and involuntary manslaughter. (*Id.* at 14–22.) The state district court further instructed the jury that: (1) it was their "duty as jurors to follow the law as [the trial judge] state[d] it to [the jury], regardless of what [any juror] may think the law is or ought to be" (*Id.* at 2); (2) the burden "rests upon the prosecution to establish every element of the crime with which the defendant is charged, and every element of the crime must be established beyond a reasonable doubt" (*Id.* at 11); (3) counsel's statements and arguments are not evidence (*Id.* at 28); and (4) the jury's "decision should be the product of sincere judgment and

sound discretion in accordance with these rules of law" (*Id.* at 33).

In Smith's direct appeal, he argued that the prosecutor committed misconduct by misinforming the jury of the legal standard for first-degree murder. (ECF No. 22-12 at 26–28.) The Nevada Supreme Court summarily rejected his claim. (ECF No. 22-15 at 3 n.1.)[9]

Here, Smith asserts that the prosecutor's closing arguments conflated the three mental state requirements—willfulness, deliberation, and premeditation—with a general intent requirement that an act be the product of a willful moving of the muscles. (ECF No. 18 at 20–22.) Smith also claims the prosecutor reduced the elements of first-degree murder to gun possession. Respondents assert that, in light of the testimony and evidence adduced at trial, any misstatement of law by the prosecutor did not constitute a denial of due process. (ECF No. 36 at 7–8.) Respondents point to multiple key pieces of evidence, including Smith's own testimony. He testified that he arranged a meeting with Duarte before the murder and he admitted he had the murder weapon after the shooting, although he said he did not pull the trigger. (ECF No. 21-1 at 51:23–53:4.) Respondents further argue that the state district court cured any misstatements with the correct jury instructions. Smith replies that the prosecutor's arguments implied that a single volitional act of pulling a "trigger" satisfies all three mental state requirements. (ECF No. 39 at 19–21.) Smith replies that the prosecutor improperly urged the jury to disregard the necessary elements for a first-degree murder conviction because the prosecutor's arguments eliminated the distinctions between grades of intentional killing.

The *Darden* standard applies to claims that a prosecutor of presented misleading arguments to the jury. A prosecutor's improper comments violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker*, 567 U.S. at 45 (quoting *Darden*, 477 U.S. at 181–83); *see also*

---

[9]Smith raised this claim for the second time in his post-conviction appeal arguing that "the State misstated the law in closing argument at trial." (ECF No. 23-16 at 3–4.) The Nevada Supreme Court held that the claim "could have been raised in [his] direct appeal," and he "failed to demonstrate good cause for his failure to do so." (*Id.* (citing NRS 34.810(1)(b)).) Because the claim was raised on direct appeal, it is exhausted.

1   *Runningeagle v. Ryan*, 686 F.3d 758, 781 (9th Cir. 2012) (improper argument "does not,

2   per se, violate a defendant's constitutional rights"). Where misstatements are made during

3   closing argument, they are generally less harmful because they are subject to objection

4   and correction by the trial court. *Boyde*, 494 U.S. at 384. "A jury is presumed to follow its

5   instructions," and to accept the law as stated by the court, not as stated by counsel.

6   *Blueford v. Arkansas*, 566 U.S. 599, 606 (2012) (quotation omitted).

7          In light of the state court record, the Nevada Supreme Court reasonably could have

8   held that the jury instructions cured any prosecutorial misstatement of the first-degree

9   murder elements. Assuming for the purposes of this discussion that the prosecutor

10  misstated the law, the record indicates that the state district court properly instructed the

11  jury on Nevada law regarding murder. Smith does not argue otherwise. Nor does he

12  explain why the jury instructions were insufficient to cure any purported misstatements.

13  Smith has not overcome the presumption that the jury followed its instructions. *See*

14  *Blueford*, 566 U.S. at 606. Given that the Nevada Supreme Court could reasonably find

15  that any improper statements did not render the trial fundamentally unfair, a conclusion

16  that Smith has not demonstrated a due process violation under *Darden*'s broad general

17  standard is neither contrary to nor an unreasonable application of that standard.

18         The Nevada Supreme Court's ruling rejecting Ground 4 was not contrary to, or an

19  unreasonable application of, clearly established federal law, and was not based on an

20  unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d).

21  The Court denies Smith relief with respect to Ground 4.

22         **B.     Ground 5 – Ineffective Assistance of Counsel**

23         Smith argues that he received ineffective assistance from his trial attorneys in

24  violation of the Sixth and Fourteenth Amendments. The Sixth Amendment right to counsel

25  includes "the right to the effective assistance of counsel." *Garza v. Idaho*, 139 S. Ct. 738,

26  743–44 (2019) (quotation omitted). In *Strickland v. Washington*, 466 U.S. 668 (1984), the

27  Supreme Court established a two-prong test for habeas claims alleging ineffective

28  assistance of counsel ("IAC"). Under *Strickland*, a petitioner must show that (1) "counsel's

24

representation fell below an objective standard of reasonableness," and (2) "any such deficiency was 'prejudicial to the defense.'" *Garza*, 139 S. Ct. at 743–44 (quoting *Strickland*, 466 U.S. at 687–88, 692). A court considering an IAC claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A habeas petitioner bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To establish prejudice, it is not enough for the petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy either question, the court need not consider the other. *Id.* at 697.

Where a state court previously adjudicated an IAC claim under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05. In *Richter*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S.] at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'").

### 1. Ground 5(a) – Failing to Invoke the Rule of Exclusion

Ground 5(a) is a companion claim to Ground 2, alleging ineffective assistance of

1  counsel for failing to invoke the rule of exclusion, which resulted in two detectives

2  intimidating Natalie while she testified at trial. The facts relevant to this claim are set forth,

3  *supra*, in the discussion of Ground 2.

4      Smith called his trial counsel as witnesses during the evidentiary hearing for his

5  state petition. (ECF No. 23-9 at 4–21 (testimony of Jenny Hubach), 97–130 (testimony of

6  John Calvert).) The state district court asked Hubach why she did not invoke the rule of

7  exclusion, and Hubach testified that the trial court typically asks the parties at the outset

8  of trial whether they wish to invoke, but that did not happen in this case. (*Id.* at 19.) When

9  asked by the state district court why he did not invoke before the trial began, Calvert could

10  not provide an explanation. (*Id.* at 110.) Both attorneys testified they did not think about

11  the exclusionary rule until Natalie's testimony discussed intimidation by the detectives,

12  which alerted the attorneys that the detectives were present in the courtroom and their

13  presence was a problem. (*Id.* at 19–20, 110–111.) Calvert attempted to invoke the

14  exclusionary rule while Natalie was testifying, but the trial court denied the motion. (*Id.* at

15  110–11; *see also* ECF No. 20-1 at 183–86.)

16      In his post-conviction appeal, the Nevada Supreme Court provided the relevant

17  background and held as follows:

18      On appeal from the denial of his May 26, 2010, petition, appellant argues
that the district court erred in denying his claims of ineffective assistance of
19      trial counsel. To prove ineffective assistance of counsel, a petitioner must
demonstrate that counsel's performance was deficient in that it fell below an
20      objective standard of reasonableness, and resulting prejudice such that
there is a reasonable probability that, but for counsel's errors, the outcome
21      of the proceedings would have been different. *Strickland v. Washington*, 466
U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d
22      504, 505 (1984) (adopting the test in *Strickland*). Both components of the
inquiry must be shown, *Strickland*, 466 U.S. at 697, and the petitioner must
23      demonstrate the underlying facts by a preponderance of the evidence,
*Means v. State*, 120 Nev. 1001, 1012, 108 P.3d 25, 88 (2004).

24
    First, appellant argues that counsel was ineffective for failing to timely invoke
25      the exclusionary rule, which resulted in the intimidation of a witness while
she was testifying at trial by other witnesses who would have been excluded.
26      Appellant has failed to demonstrate prejudice. Appellant failed to satisfy his
burden of proof at the evidentiary hearing when he presented no evidence
27      that the testifying witness was in fact intimidated into changing her
testimony, what her testimony would have been had she not been
28      intimidated, or how it would have affected the outcome at trial. We therefore

conclude that the district court did not err in denying this claim.

(ECF No. 23-16 at 2–3.)

Here, Smith argues that trial counsel's failure to timely invoke the rule of exclusion constitutes "per se ineffectiveness," and prejudice is shown in Natalie's testimony because she repeatedly voiced a fear of law enforcement, yet she had to endure the detectives' stares while testifying. (ECF No. 18 at 23–25.) Respondents counter that Smith cannot show prejudice under *Strickland*'s second prong because he has not demonstrated how Natalie's testimony would have been different in the detectives' absence, and she repeatedly affirmed that her testimony was truthful. (ECF No. 36 at 9–11.) Considering the totality of the evidence presented against Smith, including additional witnesses who corroborated Natalie's testimony, Respondents maintain that Smith fails to show how the outcome of his trial would have been different with the rule of exclusion in force. Smith replies that he has shown prejudice because the detectives' presence during Natalie's testimony allowed the prosecution to tailor or alter their subsequent testimony to render Natalie's testimony incredible. (ECF No. 39 at 22–24.)

The Nevada Supreme Court's conclusion that Smith failed to demonstrate prejudice on Ground 5(a) was neither contrary to nor an objectively unreasonable application of *Strickland's* prejudice prong on the record and arguments presented to that court.[10] Natalie testified that the detectives' presence in the courtroom and prior threats did not change the substance of her testimony. The state district court held that Smith identified no specific evidence to show the detectives actually intimidated any witness. (*See* ECF Nos. 23-9, 23-10.) The Nevada Supreme Court agreed, concluding that Smith had not shown prejudice and the state district court did not err in denying the claim. (ECF No. 23-16 at 2–3.) Smith does not identify what portions of Natalie's testimony changed based on the detectives' intimidation or what portions were rendered incredible. Nor does he identify

---

[10]Given this prejudice holding, the Nevada Supreme Court did not need to reach *Strickland*'s performance prong and did not do so.

what portions of the detectives' testimony was tailored to Natalie's. Smith has not demonstrated how trial counsel's failure to invoke the exclusionary rule had any conceivable effect on the outcome of the trial. *See Strickland*, 466 U.S. at 693. Under AEDPA, Smith has failed to meet his burden of showing that the Nevada Supreme Court unreasonably applied *Strickland* on the state court record.

The Nevada Supreme Court's ruling on this IAC claim was not contrary to, or an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court denies Smith with respect to Ground 5(a).

### 2. Ground 5(b) – Failing to Object to Prosecutor's Misstatements

Ground 5(b) is a companion claim to Ground 4, alleging ineffective assistance of counsel for failing to object to the prosecutor's misstatement of the mental state elements required for first-degree murder. The prosecutor's purported misstatements relevant to this claim are set forth, *supra*, in the discussion of Ground 4.

During the evidentiary hearing, Smith's post-conviction counsel did not ask either trial attorney why they did not object to the prosecutor's misstatements. (*See* ECF No. 23-9 at 4–21 (Hubach's testimony), 97–130 (Calvert's testimony).) The state district court asked Hubach why she did not object, but Hubach did not recall. (*Id.* at 16.) The court also asked Calvert whether he remembered the prosecutor discussing or paraphrasing his opinion of the meaning of premeditation and deliberation, but Calvert did not. (*Id.* at 125.)

The Nevada Supreme Court rejected Ground 5(b) on post-conviction appeal:

[A]ppellant argues that counsel was ineffective for failing to object to the prosecutor's misstatement of law in closing argument concerning the definitions of willfulness, premeditation, and deliberation. Appellant has failed to demonstrate deficiency or prejudice. Despite carrying the burden of proof, appellant failed to question either trial counsel at his evidentiary hearing about their decision not to object to the misstatement of the law. *See Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280–81 (1996) (noting that strategic decisions are "'virtually unchallengeable") (quoting *Howard v. State*, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990), *abrogated on other grounds by Harte v. State*, 116 Nev. 1054, 1072 n.6, 13 P.3d 420, 432 n.6 (2000))) [sic]. Further, appellant failed to provide this court with complete trial transcripts such that this court cannot review the district court's conclusion that he was not prejudiced. *See Greene v. State*, 96 Nev. 555, 558, 612 P.2d

28

686, 688 (1980) ("The burden to make a proper appellate record rests on appellant."). We therefore conclude that the district court did not err in denying this claim.

(ECF No. 23-16 at 3.)

Smith argues that counsel should have strenuously objected when the prosecutor misstated and misapplied the elements of willfulness, premeditation, and deliberation in his closing because there was no strategic reason to alleviate the State's burden of proof. (ECF No. 18 at 23–25.) Smith contends that deficient performance and prejudice are patent in the record because the prosecutor's statements precluded the jury from finding the mens rea required for conviction. Respondents assert that Smith has failed to meet his burden of showing either deficient performance or prejudice. (ECF No. 36 at 11–12.) Because he never challenged his trial counsel regarding their failure to object, Respondents claim Smith cannot overcome the presumption that counsel's inaction might be considered sound trial strategy. Smith replies that the prosecutor confused the jury thereby allowing the jury to convict Smith of first-degree murder without deliberating on the required elements. (ECF No. 39 at 24–25.)

Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation omitted); *Richter*, 562 U.S. at 109–10 ("There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect'.") (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)). As the Ninth Circuit has explained, "[b]ecause many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (on habeas review, holding that state court did not unreasonably apply *Strickland* in denying IAC claim alleging

counsel was ineffective for failing to object to prosecutor's improper comments) (quotation omitted). Where a petitioner fails to present evidence or testimony addressing a reason for trial counsel's challenged act or omission and why counsel's decision was unreasonable under the circumstances, a state court may reasonably to conclude the petitioner failed to rebut the presumption that counsel rendered adequate assistance. *Gentry v. Sinclair*, 705 F.3d 884, 899–900 (9th Cir. 2013) (rejecting IAC claim based on counsel's failure to offer mitigating evidence of petitioner's mental condition because petitioner failed to provide declaration or affidavit from counsel addressing reason counsel failed to present such evidence) (quoting *Strickland*, 466 U.S. at 690).

Based on the record and arguments presented on post-conviction appeal, as well as the previous discussion of Ground 4, the Nevada Supreme Court's conclusion that Smith failed to demonstrate deficient performance on Ground 5(b) was neither contrary to nor an objectively unreasonable application of *Strickland*. The Nevada Supreme Court's decision points out that Smith failed to question either of his trial attorneys about their decision not to object to the prosecutor's misstatement of law, despite carrying the burden of proof. (ECF No. 23-16 at 3.) The post-conviction evidentiary hearing was held nearly six years after the trial. (ECF No. 23-9.) Even if Smith had inquired of his trial attorneys, *Strickland*'s performance prong measures the objective reasonableness of counsel's performance, not counsel's subjective state of mind. *See* 466 U.S. at 688. Smith's trial attorneys may have determined that the prosecutor's misstatements were not egregious and thus decided not to object to avoid highlighting them. This is an acceptable defense strategy. *See Cunningham*, 704 F.3d at 1159. Smith bears the burden of proof on both state and federal post-conviction review. Given his failure to present any evidence or testimony addressing trial counsel's failure to object, he has not presented any proof to overcome the strong presumption of adequate performance. As such, it was not unreasonable for the Nevada Supreme Court to conclude that counsel provided adequate assistance. *See Gentry*, 705 F.3d at 900.

Because the Court finds that the Nevada Supreme Court's decision on *Strickland*'s

1   deficient performance prong was not unreasonable, the Court declines to address the

2   prejudice prong.[11] *See Strickland*, 466 U.S. at 697.

3        Under AEDPA's doubly-deferential standard, Smith has failed to demonstrate that

4   the Nevada Supreme Court's denial of this claim contradicted or unreasonably applied

5   controlling Supreme Court authority or amounted to an unreasonable determination of the

6   facts under section 2254(d). Ground 5(b) thus provides no basis for habeas relief.

7   **V.      CERTIFICATE OF APPEALABILITY**

8        District courts are required to issue or deny a certificate of appealability when it

9   enters a final order adverse to a habeas petitioner, rather than waiting for a notice of

10  appeal and request for certificate of appealability to be filed. Fed. § 2254 R. 11(a); 9th Cir.

11  R. 22-1(a). Generally, a petitioner must make "a substantial showing of the denial of a

12  constitutional right" to warrant a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack*

13  *v. McDaniel*, 529 U.S. 473, 483–84 (2000). Where a district court denies relief on

14  procedural grounds without reaching the underlying constitutional claim, the court applies

15  a two-step inquiry to decide whether a certificate of appealability is appropriate. *Payton v.*

16  *Davis*, 906 F.3d 812, 820 (9th Cir. 2018). A petitioner must show both that jurists of reason

17  would find it debatable (1) "whether the petition states a valid claim of the denial of a

18  constitutional right," and (2) "whether the district court was correct in its procedural ruling."

19  *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (quoting *Slack*, 529 U.S. at 484). To

20  meet the threshold inquiry, a petitioner has the burden of demonstrating that the issues

21  are debatable among jurists of reason; that a court could resolve the issues differently; or

22  that the questions are adequate to deserve encouragement to proceed further. *See Allen*

23  ───────────────

24       [11]The Nevada Supreme Court held that it was unable to review the state district
     court's conclusion regarding prejudice because Smith failed to provide complete trial
25   transcripts on appeal. Federal courts have a duty to conduct an independent review of the
     record, *Nasby v. McDaniel*, 853 F.3d 1049, 1052 (9th Cir. 2017) (citation omitted), and its
26   review under AEDPA is not limited to the record actually before the Nevada Supreme
     Court but instead extends to all material in the state court record. *McDaniels v. Kirkland*,
27   813 F.3d 770, 780–81 (9th Cir. 2015) (en banc) (discussing *Pinholster*, 563 U.S. at 181).
     This Court does not decline to reach Smith's arguments regarding prejudice based on any
28   deficiency in the appellate record before the Nevada Supreme Court, but simply finds there
     is no need to do so because Smith failed to establish deficient performance.

1    *v. Ornoski*, 435 F.3d 946, 950–951 (9th Cir. 2006). In this case, no reasonable jurist would

2    find this Court's denial of the Amended Petition debatable or wrong. The Court therefore

3    denies Smith a certificate of appealability.

4    **VI.**    **CONCLUSION**

5        Based on the foregoing, it is ordered that Petitioner Jacob Smith's first amended

6    petition for writ of habeas corpus (ECF No. 18) is denied in its entirety.

7        It is further ordered that a certificate of appealability is denied.

8        It is further ordered that the Clerk of Court is directed to enter final judgment

9    accordingly and close this case.

10        DATED THIS 23rd day of January 2020.

11

12    _____

13    MIRANDA M. DU
   CHIEF UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28